In the Matter of the Estate of BENJAMIN KORN, Deceased.

Surrogate's Court, Kings County, June 8, 1939.

*Charles E. Bernstein*, for Beke Korn and others, as executors-trustees, petitioners.

*Blum & Jolles*, for the Acting Consul General of the Republic of Poland on behalf of foreign legatees.

*Maurice Simmons*, special guardian for infant legatees.

*M. Allen Cutler, pro se*, claimant.

WINGATE, S. The special guardian herein was appointed to represent the interests of six infants, two of whom are the children of Reuben Korn, a son of the testator. On behalf of all six, he interposed a series of objections to the accounts of the executors, which, it is said, would, if sustained, result in surcharges approximating $35,000.

For the apparent purpose of avoiding a hearing on the merits of these objections, the accountants have paid the distributive shares of all of the infants except those of the two children of Reuben Korn and have now moved to dismiss the objections of the special guardian interposed on behalf of these last two on the assertion that the provisions of the will which purport to benefit them are void and that they consequently possess no interest in the estate with the ultimate result that they and their special guardian lack the status requisite for the purpose of objection.

Obviously this motion raises directly the validity of the testamentary provisions in this regard and requires a determination of that issue.

So far as presently material, the will directs the erection of a trust measured by the life of testator's widow with the income thereof payable one-half to her and the balance in equal shares to testator's four named children.

Upon the death of the widow, the fiduciaries are directed to divide the principal into four equal parts, three of which are given outright to three of testator's four children. The fourth part is given to his son Reuben " in trust," and " as sole trustee of this particular trust and life estate, to act without a bond." He is authorized to use the entire income and to " sell, mortgage, hypothecate or dispose of all " of the principal and to invest in any manner which he deems proper.

After this somewhat unusual direction, the will continues:

" 2. In the event of the death of my beloved son, Reuben, leaving issue, then and in that event, I hereby give, devise and bequeath to my Executors and Trustees hereinafter named that part or portion of my estate left in trust for the lifetime of my beloved son, Reuben, in trust, however, for his child or children, to collect and receive the rents, income and profits thereon, and after paying therefrom all lawful and legal expenses.

"(a) To divide the remaining balance of the rents, income and profits into as many portions or parts equal to the number of children who shall survive the death of my beloved son, Reuben, and to apply the said rents, income and profits therefrom equally among the said number of children surviving the death of my beloved son, Reuben, for their care, maintenance and support during the minority of each and every child of my said beloved son, Reuben.

"(b) I further direct my Executors and Trustees hereinafter named, and after the death of my beloved son, Reuben, to pay to each of the children upon their arriving at the age of twenty-one (21) years, *their portion* of the life estate of the said Reuben, as is hereinbefore more fully set forth, and as to *that portion*, the trust shall forthwith cease and terminate.

"(c) In the event of the death of any of the children of my beloved son, Reuben, *for which any trust has been created during his or her minority*, I hereby direct my Executors and Trustees as hereinafter named, to terminate *the trust of the deceased child* and to divide *that part or portion* of the said deceased child's part or portion *per capita* among the remaining trust estates created for the benefit of the children of my beloved son, Reuben, during their minority, as if the said trust had not been created, and that a provision had merely been made for the benefit of the surviving children.

" 3. In the event of the death of my beloved son, Reuben, without leaving issue, either before my death or thereafter, then

and in that event, that part or portion of my Estate placed in trust for my beloved son, Reuben, shall forthwith cease and terminate, and the said Estate shall be divided *per capita* among my beloved children, Jack, Joseph and Dorothy share and share alike, or their heirs and representatives." (Italics not in original.)

The intention of the testator is wholly obvious from these directions, namely, that as to one-quarter of his net estate following the death of his widow the testator wished Reuben to have the unrestricted life use thereof, and on his death, if he left children surviving, each such child was to receive the benefit of one equal part of the beneficial enjoyment until he attained the age of twenty-one years, whereupon he should receive the principal outright. The part dedicated to each child was to be a *pro rata* of the whole, depending on the number of children of Reuben who might be entitled to participate.

The first question for examination is as to whether the terms of the will, when reasonably construed, contemplate a holding of the principal of Reuben's share in the estate after his death in a single undivided fund if he is survived by more than one child, or whether the testator intended that an aliquot part of the entirety should be held for each surviving child with the several parts continued *in solido* for investment purposes only.

That the latter was his desire appears reasonably obvious from the words and phrases of the will which have been italicized in its quotation. Reference is made throughout to the several portions to be set aside for the respective children, if more than one, as being their own individual property, and each such share is to be paid over to the particular child whose property it is upon his attaining the age of twenty-one years. This provision of the will meets the test of severance and of the erection of separate and individual trusts as consistently enunciated by the Court of Appeals. (*Leach* v. *Godwin*, 198 N. Y. 35, 41; *Schermerhorn* v. *Cotting*, 131 id. 48, 61; *Wells* v. *Wells*, 88 id. 323, 333; *Locke* v. *Farmers' Loan & Trust Co.*, 140 id. 135, 144; *Steinway* v. *Steinway*, 163 id. 183, 197; *Savage* v. *Burnham*, 17 id. 561, 571; *Matter of Mount*, 185 id. 162, 169.)

It is, therefore, apparent that the testator intended that upon the death of Reuben his share of the principal should be divided into as many parts as he left children him surviving, and that the part set off for each such child should be paid to it on its attainment of the age of twenty-one.

The next clause for consideration is that designated " (c)," which provides that if any of the children should die its share should be added to the share of the others. This reads: " In the event of the death of any of the children * * * for which any trust

has been created during his or her minority." The inevitable query is as to the point of time to which such critical "death" refers. A careless reading of the direction might incline to a belief that the testator had directed this alternate gift if the death occurred at any time during the minority of such child. This interpretation is inadmissible by reason of the punctuation. There is no comma after the word "created." The succeeding five words must, therefore, refer to the immediately preceding words and not to the word "death." The natural interpretation of the entire clause, therefore, is that the time of death which the testator had in mind in this clause was death prior to the time when beneficial enjoyment should accrue, which is on the death of the life tenant, Reuben. (*Matter of Farmers' Loan & Trust Co.*, 189 N. Y. 202, 207; *Matter of Denton*, 137 id. 428, 433; *Lyons* v. *Ostrander*, 167 id. 135, 140; *United States Trust Co.* v. *Peters*, 180 App. Div. 186, 191; affd., 224 N. Y. 626; *Matter of Grube*, 7 N. Y. Supp. [2d] 794, 804, not otherwise reported.) This interpretation is to be favored since, in this aspect, it would result in validity in every contingency. (*Morris* v. *Morris*, 272 N. Y. 110, 116; *Matter of Trevor*, 239 id. 6, 16; *Matter of Moores*, 155 Misc. 471, 473; affd., 248 App. Div. 738; *Matter of Chambers*, 167 Misc. 843, 845.)

Even were the opposite view to be adopted, however, and it were to be held that the testator intended that if one of the children died after its trust had physically been erected and prior to its attaining the age of twenty-one years, its share should be added to the portions to be set aside for its surviving brothers and sisters, the direction could not presently be determined to be invalid in this aspect since the invalidity would depend on an alternate contingency as to whether or not any particular child might so die, which has not yet eventuated and which must be awaited before a definite determination of validity or invalidity may be made. (*Fowler* v. *Depau*, 26 Barb. 224, 237; *Matter of Trevor*, 239 N. Y. 6, 17; *Tiers* v. *Tiers*, 98 id. 568, 573; *Schettler* v. *Smith*, 41 id. 328, 336; *Church* v. *Wilson*, 152 App. Div. 844, 850; affd., 209 N. Y. 553; *Matter of Johnson*, 233 App. Div. 587, 590; *Matter of Von Deilen*, 154 Misc. 877, 887; *Matter of Chambers*, 167 id. 843, 847.)

The composite result thus far attained is, therefore, that on the death of Reuben his share is to be divided into as many equal parts as he left children surviving him, which respective shares then vest irrevocably in such children but are to be held for them, respectively, until each attains the age of twenty-one years, when each share is to be paid over to each such child.

The main attack of the accountants is directed at this last suspension for the period of the minority of the several children, it

being asserted that this constitutes a third limiting life. The authorities are to the contrary. As is said in *Matter of Trevor* 239 N. Y. 6, 16): " Nothing is interposed between the beneficiaries and their enjoyment of their estate except the provisions of the will as to the time of such free and unrestricted possession of their shares. * * * The suspension of the full power to alienate during minority results from the disability of infancy. The statute is aimed only at suspension by the terms of the will." (See, also, *Van Brunt* v. *Van Brunt*, 111 N. Y. 178, 187; *Beardsley* v. *Hotchkiss*, 96 id. 201, 214, 215; *Robert* v. *Corning*, 89 id. 225, 241; *Matter of Hitchcock*, 222 id. 57, 71; *Matter of Carroll*, 274 id. 288, 303; *Matter of Rolston*, 170 Misc. 548, 549, per FOLEY, S.)

It follows, therefore, that the composite directions of the will in respect of the children of Reuben are valid. Whereas, therefore, the gift of the remainder to such of them as presently may answer that description is, in a sense, contingent, since their absolute right to take will depend upon their survivorship of their father, those who are now in existence possess a contingently vested right in the remainder. (*Matter of Hilliard*, 164 Misc. 677, 692, 693; affd., 254 App. Div. 879), and they and their special guardian are entitled to object to any acts or omissions of the accountants which may have affected injuriously the property rights which they will presumptively be entitled to receive in vested ownership on the death of their father.

The motion to dismiss the objections of the special guardian for the children of Reuben is, accordingly, denied, with costs.

Enter order on notice in conformity herewith.