Evans V. Brewster, S.
This is a construction proceeding brought by testatrix’s trustees. ■ Testatrix died on August 1, 1929 and her will was admitted to probate in this court on January 2, 1930.
Under article fourth of her will, testatrix bequeathed her residuary estate to her trustees to be held in trust during the lifetime of two of her grandchildren living at the time of her death, “ the first of such grandchild” to be the youngest child of her .son, William and the second to be the youngest child of her son, Harold. Testatrix then divided her residuary in half creating two separate and equal trusts. One trust is for the benefit of testatrix’ son, William and “ his wife ”. The other is for the benefit of her son, Harold and “ his wife ”. The trust established for the benefit of William is being administered by the trustees without the need for a judicial construction of the will. William, who survived the decedent and thereafter died, was married to Gladys Bakins at the time of the decedent’s death. Gladys is presently receiving the income from William’s trust. A construction of Harold’s trust is necessary at the present time because Harold has recently died and the trustees are uncertain who is now entitled to receive the income.
*627 The pertinent provisions of article fourth relating to Harold’s trust are as follows:
“fourth (a) To hold the same in trust during the lifetime of two of my grandchildren living at the time of my death, the first of such grandchild to be the youngest child of my son william j. eakins, and the second to be the youngest child of my son harold eakins living at the time of my death. In case either of my said sons shall have no child living at the time of my death, then the trust shall continue so long as the two youngest of my grandchildren living at the time of my death shall live. In any case this trust may be sooner terminated as hereinafter provided.
“ (c) To pay the income from one of the two equal parts of my residuary estate to my son william j. eakins so long as he lives, and upon his death to his wife so long as she shall live and upon the death of both of them, to the descendants of my said son william j. eakins so that each child of his shall take an equal amount and the descendants then living of any deceased child shall collectively take the amount their parent would have received if living, and upon the termination of this trust the principal shall be distributed to my said son william j. eakins if living or if dead to his wife if living, or if both be dead, to and among all my descendants living at such time, each grandchild to take an equal share and the descendants then living of any deceased grandchild to take collectively the share their parent would have taken if alive.
“(d) To pay the income from one of the two equal parts of my residuary estate to my son harold * * * so long as he lives and upon his death to his wife so long as she shall live, and upon the death of both of them to the descendants of my said son harold # * * and upon the termination of this trust the principal shall be distributed to my said son harold * * * if living, or if dead to his wife if living, or if both be dead to and among all my descendants living,at such time, * *
“(e) In the event that both my said sons and the wives of both of my said sons shall all die during the continuance of this trust, then in such event, but in such event only, the trusts of my residuary estate shall terminate upon the youngest of my grandchildren attaining the age of forty years; and the principal of the residuary trusts shall thereupon be distributed as hereinbefore provided ” (emphasis supplied).
At the time this will was executed in 1928 and at the time of testatrix’s death on August 1, 1929, Harold was married to *628 one Jeannette Bakins. There was" one child of this marriage, Le. Janet Bakins who became one of the measuring lives of the two trusts. She died in 1967, leaving children surviving her. The other measuring life is William’s son, Philip, who was William’s youngest child living at testatrix’s death.
Harold and Jeannette were divorced in 1948. Following this divorce, Harold took a second wife, one Pauline Bakins, who died in 1958. (There was no issue of this marriage.) Then six years later, Harold took a third wife, Belle S. Bakins, to whom he remained married until his death on April 9, 1973. (Neither was there any issue of this marriage.) It is this third wife, Belle, who has made claim to the income of Harold’s trust, as ‘ ‘ his wife ’ ’ which has given rise to the uncertainty now expressed by the trustees with respect to the payment of the income.
The trustees have asked this court to determine whether the testatrix, when she employed the words “ his wife ” intended to include within their meaning Harold’s third wife, Belle S. Bakins or whether she meant only the person to whom Harold was married at the time she made her will. If the former, Belle S. Bakins will receive the present income. If the latter, Belle receives nothing and the “ descendants ” of Harold (the children of his deceased daughter, Janet) will be entitled to the income. Also, an additional issue will necessarily be determined upon the resolution of this question relating to income. This second issue is whether Belle S. Bakins now has a remainder interest contingent upon her surviving the termination of this trust. The trust must terminate upon the death of William’s son, Philip, who is the second measuring life. All of testatrix’ grandchildren are now over 40 years of age. Therefore if the court were to determine that Belle S. Bakins is Harold’s wife within the meaning intended by testatrix and if Philip should predecease Belle, then under clause (d) of article fourth the remainder would be payable entirely to Belle to the exclusion of testatrix’ descendants. On the other hand, if the court determines that Belle is not Harold’s wife within the meaning intended by testatrix, then testatrix’ descendants would receive the remainder interest either upon the death of Philip or the death of Gladys, the wife of testatrix’ other son, William.
For the reasons expressed below, the court determines that the testatrix intended the words “ his wife ” to refer to the person who was ^Harold’s wife (Jeannette) at the time she made her will and that Therefore Belle S. Bakins has no beneficial interest in this will.
*629 There is no dispute that the general rule in this State is that a gift to the wife or husband of a married person in the absence of an expression of a contrary intent will be. construed to mean the man or woman who is the husband or wife of the person at the time of the execution of the will and not a person he or she may thereafter marry (Matter of Bradley, 119 Misc. 2). However, Belle S. Bakins believes that this general rule has been applied in cases involving trusts only to avoid possible invalidity under the Rule against Perpetuities (Van Brunt v. Van Brunt, 111 N. Y. 178; Matter of Friend, 283 N. Y. 200). The violation of the rule usually arises because a construction which holds the after married spouse to be the spouse intended by a testator may cause the trust term to be measured by the life of a person not in being at the time of the testator’s death. The argument here is made that because no perpetuities problem exists in this trust (which is measured by the lives of Janet Bakins and Philip Bakins), there is no need to follow the general rule.
While it is true that no perpetuities problem exists here, it does not necessarily follow that Belle S. Bakins must then be held to be the wife intended by testatrix. The question is still one of intent and the court must still search within the four corners of the will to determine that intent (Matter of Fabbri, 2 N Y 2d 236) just as in any other will construction.
An examination of testatrix’s testamentary scheme leads this court to conclude that Belle S. Bakins is not the wife intended by testatrix. Her plan is thoroughly conceived and spelled out in detail. With the exception of a bequest to her executors for perpetual care of a family burial plot and monument, there are no preresiduary gifts. The residue which was placed in trust was, in effect, testatrix’s entire estate. This residue was evenly divided and the two branches of the family were treated equally under parallel provisions of each trust. There can be no question that testatrix desired to confer; a benefit on her descendants should the trust continue beyond the lives of her sons. Presumably, were the wife of either son to receive the trust remainder upon termination, then the children of each son could reasonably be expected to share from their mother. To this extent, the benefits conferred upon the descendants were protected even if a son’s wife were to inherit the remainder. However, if the court were to adopt the construction urged by Belle S. Bakins, then this intent to benefit descendants could be frustrated; the descendants from Harold’s branch of the family conceivably could receive nothing if the trust were to termi *630 nate while Belle S. Bakins were alive. Obviously Harold’s children cannot expect to derive any benefits from a ‘ ‘ wife ’ ’ who is not their mother. Yet the benefits given to descendants from William’s branch of the family are still preserved. This would create an inequality entirely at variance with testatrix’s manifest intent to treat the two branches alike. Moreover, the court cannot find any evidence of an intent by testatrix to hold that when she used the words ‘ ‘ his wife ’ ’ she meant to benefit a woman whom she never knew (as opposed to the wife she did know) and who became Harold’s wife some 34 years after her death. On the contrary, the words selected by the testatrix in directing the payment of income to her son and to ‘ ‘ his wife ” and “ upon the death of both of them ” (emphasis supplied), to the descendants of her son, is indicative of testatrix’ intent to benefit her daughter-in-law, Jeannette and not a wife unknown to her. The will is so construed.